NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PAULETTE BROGNA and GEORGE BROGNA, her husband, | : : : : | Civ. No. 05-4839 (GEB) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : |  |
| UNITED STATES OF AMERICA, *et al.*, | : : |  |
| Defendants. | : : |  |

**BROWN, Chief Judge**

This matter comes before the Court upon defendant United States of America's ("Defendant" or "United States") motion to dismiss for lack of jurisdiction and for summary judgment. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b), and has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, this Court will grant in part and deny in part Defendant's motion to dismiss and for summary judgment.

I.   BACKGROUND

Plaintiffs Paulette Brogna and George Brogna (collectively "Plaintiffs") are wife and husband who, during the relevant times, were residents of Hollywood, Florida. (Paulette Brogna Dep. at 11; Wingfield Decl. at 1.) Tri State Motor Transportation ("TSMT") is a trucking company located in Joplin, Missouri. (Ex. 1 at 2.) During the relevant times, Plaintiffs were

1

truck drivers employed by TSMT. (Ex. 1, Ex. 8 at 8-9.) Plaintiffs did not own their own tractor, but were assigned one by TSMT. (Ex. 8 at 9.)

Earle Naval Weapons Station ("NWS Earle") is a military installation owned by the United States and located in Colts Neck, New Jersey. (Ex. 5 at 1, 4.) The station is used to provide combat logistics support of ordnance functions, and the transport of ammunition is a primary function of the ordnance command. (*Id.* at 4.) The ordnance command at NWS Earle contracted with TSMT, through a bill of lading, for the transportation of ammunition from the Atlantic Ordnance Command Detachment Earle in Colts Neck, New Jersey, to the Crane Army Ammunition Activity in Crane, Indiana. (Ex. 3 at 1.)

On or about January 26, 2004, the date of the accident, Plaintiffs arrived at NWS Earle to pick up a trailer loaded with the ammunition to be delivered. (George Brogna Tr. at 13-14; Compl. ¶ 4.) After Plaintiffs' arrival, Ms. Brogna went to what is known as a scale house to find out which trailer she and her husband were to pick up for delivery. (George Brogna Tr. 14, 17-18.) After leaving the scale house, Ms. Brogna went with her husband to a holding area where the trailer was located. (*Id.* at 18.) After retrieving the trailer, Plaintiffs returned to the scale house to weigh the truck. (*Id.* 22-24.) Plaintiffs allege that Ms. Brogna subsequently fell as a result of snow and ice accumulation. (Compl. ¶ 5.)

On October 7, 2005, Plaintiffs filed the present tort action against the United States, the Department of the Navy, and several unidentified defendants, asserting claims of negligence and loss of consortium. (*Id.* ¶¶ 3-8, 10-12, 14-15.) On May 30, 2007, Defendant filed the present motion to dismiss and for summary judgment. In addition to the briefs filed by the parties, an *amicus* brief was filed on July 10, 2007 by American International Group ("AIG"), Plaintiffs'

workers' compensation carrier. Briefing on the matter now complete, the Court will address the present motion.

## II.   DISCUSSION

In support of its motion, Defendant argues that the Court should dismiss Plaintiffs' claims against the Department of the Navy for lack of jurisdiction. (Def.'s Br. at 9-10.) In addition, Defendant argues that summary judgment is appropriate for Plaintiffs' claims against the United States because it is an employer pursuant to the applicable workers' compensation scheme, and that it is therefore immune from Plaintiffs' claims. (*Id.* at 16.) The Court will address each argument separately.

### A.   Defendant's Motion to Dismiss for Lack of Jurisdiction

#### 1.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's "authority or competence to hear and decide the case before it." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1350 (3d ed. 2004). In the absence of subject matter jurisdiction, this Court is without power to hear the case. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999). The party asserting jurisdiction bears the burden of demonstrating in the record that jurisdiction is proper. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). Moreover, the Court is obligated to examine the issue of subject matter jurisdiction even if the parties concede the existence of jurisdiction. *See Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996). In making its

determination, the Court is not confined to examining the face of the pleading, but may consider other evidence demonstrating the existence or lack of jurisdiction, and may make factual findings when necessary to the extent that there are disputes of fact. *See Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990).

"There are two types of Rule 12(b)(1) motions, those which attack the complaint on its face and those which attack the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Cohen*, 45 F. Supp. 2d at 428 (internal quotations omitted). Under a facial attack, the allegations of the complaint are taken as true. *Id.* In a motion attacking "the existence of subject matter jurisdiction, however, no presumptive truthfulness attaches to the allegations" in the complaint. *Id.*

        2.    **Whether Plaintiffs' Claims Against the Department of the Navy Should Be Dismissed**

Defendant argues that Plaintiffs assert their claims based on the United States's waiver of sovereign immunity pursuant to the Federal Tort Claims Act ("FTCA"), and that because the waiver does not extend to the Department of the Navy, the Court lacks jurisdiction over this case. (Def.'s Br. at 9-10.) In lawsuits against the United States, the plaintiff must identify both the jurisdictional statute and the statute that waives sovereign immunity. *Clifton County Comm'rs v. U.S. Env. Protection Agency*, 116 F.3d 1018, 1021 (3d Cir. 1997), *cert denied* 522 U.S. 1045 (1998). The Federal Tort Claims Act constitutes a "limited waiver" of the federal government's sovereign immunity from suit. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Defendant argues that "[t]he FTCA waives immunity only for suits against the United States," and that

"[b]ecause there is no waiver of sovereign immunity for suits against the Department of the Navy, this court lacks jurisdiction over the Department . . . ." (Def.'s Br. at 10.)

Pursuant to the FTCA, "the United States is the only proper defendant in a suit for personal injuries arising out of the negligence of federal employees." *Dilg v. U.S. Postal Serv.*, 635 F. Supp. 406, 407 (D.N.J. 1986). "Individual agencies of the United States may not be sued in their own name in such a case." *Id.* Moreover, "strict adherence with the terms and requirements of the FTCA is jurisdictional and cannot be waived." *Id.* The Court will therefore dismiss Plaintiffs' claims against the Department of the Navy as a named defendant.

        B.        **Defendant's Motion for Summary Judgment**

                1.        **Standard of Review**

In deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

      **2.    Whether Summary Judgment Should Be Entered with Respect to Plaintiffs' Claims Against the United States**

      **a.    Which State's Law to Apply**

In *Eger v. E.I du Pont DeNemours Co.*, 110 N.J. 133, 539 A.2d 1213 (1988), the New Jersey Supreme Court explained the appropriate analysis for deciding which state's law to apply in cases where a tort defendant asserts a statutory employer defense. In *Eger*, the plaintiff was a New Jersey resident employed as a draftsman for Allstates, a New Jersey corporation. *Eger*, 539 A.2d at 1214. The defendant employed Allstates as a subcontractor for work on a nuclear facility located in South Carolina, and the plaintiff was sent to work at the facility. *Id.* The plaintiff subsequently became sick, and brought a tort action against the defendant. *Id.* at 1214-15. Prior to his lawsuit, the plaintiff had filed a workers' compensation claim against Allstates. *Id.* at 1214. The defendant moved for summary judgment, arguing that pursuant to South Carolina's workers' compensation act, it qualified as a statutory employer. *Id.* at 1215.

To determine whether South Carolina or New Jersey law applied to the plaintiff's tort claim against the general contractor defendant, the New Jersey Supreme Court balanced the governmental interests involved. *Id*. at 1217. The court found that the general contractor's interest in anticipating liability outweighed the employee's interest in securing a particular form of compensation. According to the court:

> South Carolina has a genuine and legitimate interest in protecting the welfare of persons working within its borders, affixing responsibility for that protection, regulating the safety of the workplace, and allocating the financial costs resulting from employment accidents. To address these governmental concerns, South

> Carolina, as part of its comprehensive workers' compensation scheme, has required that a general contractor assume the burden of furnishing workers' compensation coverage for the employees of its subcontractors as if they were in fact employees of their own. This imposition of liability furthers South Carolina's interest in protecting the welfare of its workers by giving them the right to seek compensation benefits from either their immediate employer or the usually more fiscally responsible statutory employer, namely, the general contractor, . . . thus providing a safeguard against the insolvency of either potential source of benefits.

*Id.*

The court further stated that "[a]pplication of New Jersey law to allow a tort suit against a South Carolina general contractor such as Du Pont would undermine the foundation of that state's workers' compensation statute." *Id.* The court observed:

> Immunity from tort liability of a party obligated to provide compensation coverage is an essential element of the fundamental equation in every workers' compensation system: the statutorily imposed agreement in which an employer provides compensation coverage protecting employees injured in all work-related accidents without regard to fault in return for immunity from suit based on fault arising from such accidents.

*Id*. "The courts clearly consider that this system of mutual give and take [between employers and employees] would be upset if the employee could sue for negligence in another jurisdiction." *Id.* (internal quotations omitted).

The court also discussed "New Jersey's variant scheme[,] in which the general contractor is not required to provide compensation coverage, and is exposed to potential tort liability." *Id.* The court explained that under that scheme, a New Jersey general contractor "can insulate itself from any liability for workers' compensation by insisting that its subcontractors comply with their statutory obligation to carry workers' compensation insurance." *Id.* at 1217-18.

The court then discussed whether South Carolina's interest in subjecting the general contractor to its workers' compensation scheme was outweighed by New Jersey's interest in

protecting the employee and the subcontractor. The court observed that "the fact that plaintiffs in this case are protected by both Allstates' and Du Pont's compensation coverage and thus are assured of receiving compensation benefits plays a significant role in the weighing of governmental interests." *Id.* at 1218. "To the extent that a third party tort action would augment the employee's recovery, such a remedy is ancillary to the central goals of workers' compensation and is primarily for the benefit of the employee, . . . only incidentally furthering any state interest." *Id.* at 1219.

As for the subcontractor, the court noted that "[t]he second consequence of allowing a tort suit under New Jersey law is to provide a vehicle for the reimbursement of compensation paid by the employer." *Id.* The court determined that "[r]eimbursement from the proceeds of a tort award against a negligent third party, however, does not advance a significant state interest under the circumstances of this case" because "[the] [r]eallocation of the burden of providing compensation to reflect the relative fault of the contractors involved is at best an ancillary function of the workers' compensation statute." *Id.* The court noted that "[u]nlike the situation with regard to true third parties, . . . a subcontractor and general contractor can adjust the terms of their contractual relationship to allocate the burden of providing compensation coverage." *Id.*

This case resembles *Eger* in all essential respects. As in *Eger*, Defendant is a general contractor employing a subcontractor located in a different state. As in *Eger*, Defendant's state – in this case, New Jersey – has an interest in ensuring that its residents are subject to the liability scheme that they anticipate for employment-related accidents. The *Eger* court noted that under New Jersey's scheme, "the general contractor is not required to provide compensation coverage, and is exposed to potential tort liability." *Id.* at 1217. The court explained that a general

contractor could anticipate its exposure to tort liability, and could "insulate itself from any liability for workers' compensation by insisting that its subcontractors comply with their statutory obligation to carry workers' compensation insurance." *Id.* at 1217-18.  Insofar as general contractors located in New Jersey negotiate contracts and make decisions based on their anticipated liability exposure, New Jersey has an interest in ensuring that those contractors are subject to the liability scheme that they expect to apply.

Moreover, as in *Eger*, the interests of the states of the employee and subcontractor – Florida and Missouri – are not outweighed by New Jersey's interest in ensuring that the general contractor be liable pursuant to the liability scheme that it anticipated.  Here, Plaintiffs do not dispute that they have recovered workers' compensation. (Ex. 1 at 3-4; Wingfield Decl. at 1.)  That fact "plays a significant role in the weighing of governmental interests." *Eger*, 539 A.2d at 1218.  As for the subcontractor, as the *Eger* court explained, "[the] [r]eallocation of the burden of providing compensation to reflect the relative fault of the contractors involved is at best an ancillary function of the workers' compensation statute" because "[u]nlike the situation with regard to true third parties, . . . a subcontractor and general contractor can adjust the terms of their contractual relationship to allocate the burden of providing compensation coverage." *Id.* at 1219.  For these reasons, the Court concludes that New Jersey law is applicable to this case.

### b.     New Jersey's Law Concerning Statutory Employees

Under New Jersey's workers' compensation scheme, N.J. Stat. Ann. § 34:15-1, *et seq.*, "an employee's exclusive remedy against [his] employer for ordinary work injuries is a statutory remedy without regard to fault.  In return, the employee forgoes a common law tort remedy."

*Gore v. Hepworth*, 316 N.J. Super. 234, 720 A.2d 350, 353 (1998). "It is well settled under New Jersey law that an employee may have two employers for purposes of the workmen's compensation scheme – a primary employer and a 'special' employer – and is barred from bringing a tort lawsuit against either employer." *Roma v. United States*, 344 F.3d 352, 364 (3d Cir. 2003). The New Jersey Supreme Court has established a three-prong test for determining whether a defendant should be considered a special employer for workers' compensation purposes. Under that test, there is a special employment relationship if: (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work. *Volb v. G.E. Capital Corp.*, 139 N.J. 110, 651 A.2d 1002, 1005 (1995). As the Third Circuit Court of Appeals has noted, "[a]lthough some New Jersey lower courts have considered two additional elements – '(d) the special employer pays the employees wages; and (e) the special employer has the power to hire, discharge or recall the employee,' . . . – other cases have minimized the importance of these two additional factors." *Roma*, 344 F.3d at 364 (citations omitted). Moreover, the New Jersey Supreme Court has emphasized that "the most important factor in determining a special employee's status is whether the borrowing employer had the right to control the special employee's work . . . ." *Volb*, 651 A.2d at 1005.

        c.    **Whether Defendant Was a "Special Employer" Pursuant to New Jersey Law**

In support of its motion, Defendant argues that it was a special employer to Plaintiffs because it satisfies each of the relevant factors. According to Defendant, the first and second

factors are satisfied because it had a contract with TSMT for the transport of ammunition, and Plaintiffs' claims are based on injuries alleged to have occurred during the performance of that contract. (Def.'s Br. at 17-22.) Defendant also argues that the third factor – whether the employer has a right to control the details of the work – is satisfied. According to Defendant, it retained the right to monitor the shipment during the expected delivery from NWS Earle to Indiana, the destination for the shipment. (*Id.* at 22; Ex. 4.) In particular, Defendant used a service called Satellite Motor Surveillance to track vehicles such as Plaintiffs' every 15 minutes during the course of delivery. (Def.'s Br. at 22, Ex. 4.) In addition, Plaintiffs were required to report transit movement changes as well as notify Defendant of emergency situations. (Def.'s Br. at 22, Ex. 4.) During emergencies, it was Defendant that would direct the response. (Def.'s Br. at 22, Ex. 10 at 3-5.) Moreover, Defendant claims that it had the right to inspect all records, route plans, and driver qualification files for Plaintiffs. (Def.'s Br. at 22, Ex. 4.)

     As an initial matter, the Court notes that in its *amicus* brief, AIG also argues that it was TSMT, not Defendant, that retained control of Plaintiffs during their work at NWS Earle. According to AIG, "[TSMT] retained the discretion to hire and fire the plaintiffs, set their hours of operation, the specific maintenance requirements for the vehicle, the paperwork and reporting requirements they had to comply with, the time for which they could take breaks or engage in personal communications while working, their dress and appearance, in what manner they should interact with clients and the innumerable other basic and sometimes idiosyncratic items that an employer can regulate." (AIG Br. at 12.) AIG has not, however, identified any evidence to support these assertions. (*See id.*) In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

11

but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court will therefore reject AIG's unsubstantiated arguments.

As for Plaintiffs, they argue that it was TSMT that retained employment control over them during the delivery of the shipment. Plaintiffs argue that "TSMT was engaged in the regular business of supplying trucks, supplying monitoring equipment and providing an operator." (Pl.'s Opp. Br. at 19; Wingfield Decl. at 1.) Plaintiffs contend that TSMT retained control over Plaintiffs because it chose the drivers that it sent for deliveries, was responsible for the mechanical fitness of its vehicles, determined what Plaintiffs were to be paid, and retained the right to fire Plaintiffs. (Pls.' Opp. Br. at 19-20; Wingfield Decl. at 1.) Plaintiffs argue that any control that Defendant exercised concerned the freight itself, not Plaintiffs' actions in the course of delivering the freight. (*See* Pls.' Opp. Br. at 20.)

Viewing the underlying facts, and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that Defendant's motion for summary judgment should be denied. With respect to the first factor, Defendant provides evidence showing only that Defendant hired TSMT to deliver the ammunition shipment. (Def.'s Br. at 16-17; Ex. 3 at 1.) Defendant fails to identify any evidence, however, that Plaintiffs individually made any agreement – express or implied – with Defendant, or that they submitted to employment terms required by Defendant.

With respect to the second factor, Defendant demonstrates that the transportation of ammunition is integral to the Department of the Navy, and that the ordnance command at NWS Earle is responsible for the movement of ammunition, as well as its testing, storage, and loading. (Def.'s Br. at 17; Ex. 5 at 5-6.) The second factor, however, "requires [the court] to look at the

work actually being performed and conclude that a special employment relationship is established where the employee is doing work that is more accurately characterized as work of the special employer alone . . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 252 (3d Cir. 2004). Defendant has offered no evidence showing that it is engaged in the business of shipping freight, whether ammunition or other materials, and therefore fails to satisfy the second factor.

Finally, with respect to control, the parties have each provided evidence showing that both TSMT and Defendant exercised some level of control over Plaintiffs' pickup and expected delivery of the ammunition shipment. The Court notes, however, that "the right to control the end result is distinguished from the method of arriving at it, and falls short of showing employment." *Murin v. Frapaul Constr. Co.*, 240 N.J. Super. 600, 573 A.2d 989, 994 (App. Div. 1990). "Thus the borrower of a truck and driver can specify the cargo, destination and route without thereby being deemed to assume control of the work." *Id.* "If it can honestly be said that the thing contracted for is essentially the end result of getting the goods delivered, the relationship with the general employer may survive more 'control' without becoming an employment relationship." *Id.* Here, although Defendant provides evidence that Plaintiffs were subject to continuous surveillance during delivery, that surveillance was limited to the route that Plaintiffs were to take, not the details of how they performed their work. *Cf. Roma*, 344 F.3d at 365 (holding that the defendant had the right to control the plaintiff based on the existence of a mutual aid agreement with the plaintiff's employer, the instruction by plaintiff's employer to follow the instructions of the defendant, and the plaintiff's testimony that he followed the orders of the defendant); *Kelly v. Geriatric and Med. Servs., Inc.*, 287 N.J. Super. 567, 671 A.2d 631, 636 (App. Div. 1996) (holding that defendant hospital had the right to control the plaintiff

because "her work duties and job performances were assigned, directed and overseen by [the defendant], the defendant had "day to day control" of the plaintiff, and the defendant had the "right to direct the on-site work assignments").

Defendant has failed to satisfy any of the three factors, and is therefore not immune from the present lawsuit as a special employer.

### III.    CONCLUSION

For these reasons, Defendant's motion to dismiss Plaintiffs' claims against the Department of the Navy is granted, and its motion for summary judgment of Plaintiffs' claims against it is denied. An appropriate form of order is filed herewith.

Dated:  August 31, 2007

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.